IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

EVER SAMUEL MONTENEGRO OLIVAS,

    Petitioner,

v.                                                                       No. 2:25-cv-01197-MLG-GJF

TODD LYONS, in his official capacity as
Acting Director of U.S. Immigration and
Customs Enforcement; MARY DE
ANDA-YBARRA, in her official capacity
as Field Office Director of U.S.
Immigration and Customs Enforcement,
Enforcement and Removal Operations;
DORA CASTRO, in her official capacity
as Warden of the Otero County Processing
Center; PAMELA BONDI, in her official
capacity as U.S. Attorney General; and KRISTI
NOEM, in her official capacity as Secretary
of the US. Department of Homeland Security,

    Respondents.

**ORDER PARTIALLY GRANTING EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND GRANTING
PETITION UNDER 28 U.S.C. § 2241 FOR A WRIT OF HABEAS CORPUS**

       This matter is before the Court on Petitioner Ever Samuel Montenegro Olivas's initial Petition for a Writ of Habeas Corpus ("Petition"), Doc. 1, and his subsequent Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO"). Doc. 13. Montenegro Olivas, a Nicaraguan citizen, was detained upon entry into the United States.[1] *Id.* at

---

[1] It is unclear to the Court whether Montenegro Olivas entered the United States in January 2022 or January 2023. In his initial Petition, Montenegro Olivas alleged entry on January 3, 2022. Doc. 1 at 4. This date is corroborated by the body paragraph of his Superseding NTA. *See* Doc. 13-2 at 1 ("You arrived in the United States at or near El Paso, TX, on or about January 3, 2022[.]"); Doc. 16-1 at 1 (same); *see also* Doc. 16-2 at 1 (reflecting in Montenegro Olivas's DHS Form I-213 Record of Deportable/Inadmissible [Noncitizen] an entry date of January 3, 2022, and a warrant

3; Doc. 16 at 2. Federal agents issued Montenegro Olivas a Notice to Appear ("NTA") before an Immigration Judge ("IJ") in El Paso, Texas, "to show why [he] should not be removed from the United States" despite his status as "a [noncitizen]$^2$ present in the United States without being admitted or paroled . . . ." Doc. 13-2 at 1 (citing 8 U.S.C. § 1182(a)(6)(A)(i)). Although the NTA initiated his removal proceedings, Montenegro Olivas was released on his own recognizance, provided he comply with several conditions, including: (1) reporting to all future hearings about his immigration status; (2) surrendering to removal from the United States if so ordered, and (3) checking in with ICE duty officers as directed. Doc. 13 at 3; Doc. 13-3 at 1. He has since complied with all these obligations, and he has been working lawfully under valid employment authorization documents at a stable job. *See* Doc. 13 at 4.

For reasons unknown to the Court, Montenegro Olivas was arrested at an immigration checkpoint in Las Cruces, New Mexico, on October 14, 2025. *See id.* at 3. He was immediately detained and transferred into ICE custody at the Otero Processing Center in Chaparral, New Mexico, subject to final adjudication of his removal proceedings before the U.S. Immigration Court on April 9, 2026. Doc. 1 at 1; Doc. 13 at 3-4; Doc. 16-3.

---

of arrest and NTA being issued on January 8, 2022). But the Superseding NTA is dated February 22, 2023, below the signature of the issuing officer, and notes in the margin that it "[s]upersedes the Notice to Appear issued on January 3, 2023[.]" *See* Doc. 13-2 at 1; Doc. 16-1 at 1. Further, unlike his initial Petition, Montenegro Olivas alleges a January 3, 2023, entry date in his Motion for TRO, and appends a supporting affidavit from his attorney with the same claim. Doc. 13 at 2; Doc. 13-1 at 2 ¶ 4; *but see* Doc. 17 at 2 n.1 (noting "Petitioner's motion mistakenly states that the date of entry was January 3, 2023; however, the NTA (Exhibit A) reflects that the correct date of entry is January 3, 2022"). Whether Montenegro Olivas effected entry into the United States in January 2022 or January 2023 does not change the Court's legal findings nor its decision to partially grant Montenegro Olivas's Motion for TRO and fully grant his initial Petition.

$^2$ "This [order] uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

On December 2, 2025, Montenegro Olivas petitioned the Court to (1) "[d]irect Respondents to immediately set a bond hearing under INA 236(a);"[3] (2) "assume jurisdiction over this matter;" (3) "order[] the Respondents to show cause why this Petition should not be granted;" and (4) "order that the Immigration Judge cannot deny Petitioner's bond request for lack of jurisdiction and that INA 236(a) applies in this case." Doc. 1 at 10. The Court granted Montenegro Olivas's second and third requests, assuming jurisdiction and ordering Respondents to "respond to the Petition and show cause why it should not be granted within three days of receipt of service." Doc. 3 at 2; *see generally* 28 U.S.C. §§ 1331, 2241 (addressing the Court's power to rule on federal questions and writs of habeas corpus that arise within its jurisdiction).

Before Respondents' counsel entered appearance, Montenegro Olivas requested a custody redetermination hearing. *See* Doc. 13 at 3. IJ Brock Taylor presided over that proceeding on December 9, 2025, and denied Montenegro Olivas's bond request based on a finding that "[t]he Court lacks jurisdiction to grant a bond" under the Board of Immigration Appeal's ("BIA") recent guidance in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[4] Doc. 13-4 at 1; *see also* Doc. 13 at 3.

Montenegro Olivas filed suit in this Court thereafter challenging the legality "of the statutory framework by which the Respondents are detaining him without bond under 8 U.S.C. § 1225(b)(2)." Doc. 13 at 4. He also filed a Motion for TRO requesting his immediate release from

---

[3] The Immigration and Nationality Act (INA) is a collection of U.S. immigration laws codified in Title 8 of the U.S. Code. Citations to INA section numbers and U.S. code section numbers are used interchangeably throughout this Order.

[4] A recent BIA precedential decision holding that section 235(b)(2)(A) of the INA, codified at 8 U.S.C. § 1225(b)(2)(A), precludes IJs from granting bond requests to people who are present in the United States unlawfully.

ICE custody or, in the alternative, directing that another bond hearing be conducted in accordance with § 1226(a). Doc. 13 at 5-7, 9.

The relevant question is whether Montenegro Olivas is eligible for a bond hearing pursuant to § 1226(a),[5] or whether he is subject to the mandatory detention provisions provided for in § 1225(b)(2).[6] This Court has addressed this issue numerous times with regard to similarly situated defendants.[7] *See Cortez-Gonzales v. Noem*, No. 2:25-cv-00985, 2025 WL 3485771, at *3-5 (D.N.M. Dec. 4, 2025); *Diaz-Cruz v. Dedos*, No. 1:25-cv-01117, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025); *Gonzales Ramos v. Dedos*, No. 1:25-cv-00975, 2025 WL 3653928, at *3-4 (D.N.M. Dec. 17, 2025); Order Partially Granting Petition for Writ of Habeas Corpus at 3-4, *Gallardo-Garcia v. Noem*, No. 2:25-cv-01097 (D.N.M. Jan. 6, 2026). As in those prior decisions, the Court hereby finds § 1226(a) governs Montenegro Olivas's detention.[8]

---

[5] "On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States . . . and pending such decision, the Attorney General . . . *may* release the [noncitizen] on . . . bond of at least $1,500 . . . ." § 1226(a) (emphasis added).

[6] "[I]n the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained for a proceeding under section 1229a." § 1225(b)(2) (emphasis added).

[7] Montenegro Olivas's case for bond eligibility is bolstered by records showing that DHS previously applied § 1226 provisions to make detention decisions pending final removal proceedings. *See* Doc. 17 at 2; *see also* Doc. 13-3 at 1 ("In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being release on your own recognizance . . . .").

[8] "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). Given that § 1226(a) is controlling, Montenegro Olivas is entitled—as a right—to an individualized bond hearing. *See Salazar v. Dedos*, No. 1:25-cv-00835, 2025 WL 2676729, at *5 (D.N.M. Sept. 17, 2025). Montenegro Olivas's continued detention on the basis of § 1225(b)(2) constitutes an

Given the preceding, the Court hereby denies Montenegro Olivas's request for immediate release[9] but grants his alternative request, ordering Respondents to provide Montenegro Olivas with an individualized bond hearing pursuant to § 1226(a) within seven (7) days of the date of this Order. At the bond hearing, Respondents shall bear the burden of justifying Montenegro Olivas's continued detention by clear and convincing evidence.[10]

Respondents are further ordered to file a status report within ten (10) days of this Order to certify compliance. The status report shall include when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial. If Montenegro Olivas has

---

ongoing violation of the INA and his right to due process under the Fifth Amendment of the U.S. Constitution. *See Rodriguez v. Bostock*, No. 3:25-cv-05240, 2025 WL 2782499, at *15-16 (W.D. Wash. Sept. 30, 2025).

[9] Montenegro Olivas argues in his Reply to his Motion for TRO that he should be granted immediate release from detention because "[t]he Court's Order to Show Cause required Respondents to respond three (3) days after receiving notice[,]" and since "Respondents never filed any response showing cause why the writ should be not be granted, . . . Respondents have failed utterly to articulate a legitimate interest in the Petitioner being detained." Doc. 17 at 6-8. The Court rejects this argument as a basis for immediate release. First, Montenegro Olivas did not raise this argument in his Motion for TRO—only in his Reply brief. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived." (citing *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008)). Second, the Court issued an Order Setting Briefing Schedule for Petitioner's Motion for a Temporary Restraining Order and ordered Respondents to respond to the Motion for TRO no later than Tuesday, December 30, 2025, at 5:00 p.m. MT. Doc. 14 at 2. Respondents filed a response from the Government on December 29, 2025, asking the Court to deny or dismiss *both* the Motion for TRO *and* the original Petition. *See* Doc. 16 at 1-2.

[10] The burden at a bond hearing is normally on the noncitizen to demonstrate detention is unwarranted. *Salazar*, 2025 WL 2676729, at *6 (first citing 8 C.F.R. § 236.1(c)(8); then citing *Matter of Adeniji*, 22 I.&N. Dec. 1102, 1116 (BIA 1999)). Given the ongoing violation of Montenegro Olivas's due process rights, however, this Court agrees with the other courts in this district who have addressed similar cases and found that the burden at the individualized bond hearing has shifted to Respondents. *Pu Sacvin*, 2025 WL 3187432, at *3 (joining "most other district courts in concluding that a noncitizen's 'strong private interest in being free from civil detention' outweighs the Government's comparatively minimal burden to justify custody" (quoting *Salazar*, 2025 WL 2676729, at *6)).

not received a lawful bond hearing within seven days, this Court orders that he be immediately released.

Respondents are enjoined from removing Montenegro Olivas from the United States or transferring him to any facility outside the U.S. District of New Mexico during the pendency of this habeas action. Until further Order is issued by the Court, the Court retains jurisdiction to enforce and modify this Order as appropriate.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA